## HAMBLEN v. GERMAN.

(Supreme Court, Appellate Division, Second Department. April 15, 1904.)

1. EVIDENCE—CONTEMPORANEOUS ORAL AGREEMENT—SUFFICIENCY OF PLEADING.

   In an action for the recovery of a certificate representing a seat in a produce exchange, defendant answered, claiming title under a written agreement with plaintiff, and also asserting title generally by virtue of plaintiff's transfer and delivery to him of the certificate with a blank assignment indorsed thereon. *Held*, that the answer was sufficient to admit testimony that the transfer was made under a contemporaneous oral agreement therefor.

2. SAME—EXECUTED CONTRACT.

   The rule that a contemporaneous oral agreement cannot be proved to vary a written one does not exclude parol evidence that the transfer of a chattel was pursuant to and in consummation of an oral agreement therefor, made contemporaneously with a written contract for the transfer of other property, and as a part of the same transaction; the effect of the evidence being, not to enforce an executory oral agreement, but to defend a title as derived in execution of such an agreement.

Appeal from Special Term, Kings County.

Action by Andrew H. Hamblen against Lewis German. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J.; and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Charles H. Fuller, for appellant.

Emanuel Eschwege, for respondent.

HIRSCHBERG, P. J. The circumstances out of which this controversy arises are unusual. The plaintiff and his wife entered into a written agreement with the defendant on the 1st day of December, 1888, by the terms of which the plaintiff and his wife practically agreed to give to the defendant all the property they had, and to will to him all which they might have at death, and the defendant agreed in turn to pay the plaintiff's debts, and to support him and his wife until the death of the survivor of them. At the time of the execution of the agreement the plaintiff was the owner of certain real estate in the town of Flatbush, and he also owned personal property consisting of a steam lighter, a seat in the New York Produce Exchange, with the insurance or interest in the guaranty fund attached to it, and two life insurance policies, which had been taken for the benefit of his wife. The real estate was mortgaged for $6,000 and the steam lighter for $4,000. The certificate representing the seat in the produce exchange was pledged with the Corn Exchange Bank as collateral security for a loan of $1,000 which the bank had made to the plaintiff, and the plaintiff was otherwise indebted in about the sum of $1,900. The defendant agreed in the written contract referred to to assume and pay off the mortgages, to discharge the debts, to pay the premiums on the life insurance policies and all assessments, premiums, and dues on the seat in the produce exchange and insurance attached to it. He also agreed, as I have said, to support and maintain the plaintiff and his wife in the style to which they had been accustomed either at Flatbush or elsewhere in the state of New York, as the plaintiff might appoint, paying all expenses of removal and of travel in case of a change of residence, to provide for them shelter, clothing, and necessities, and to pay them $250 a year while they both lived, and one-half that sum to the survivor as such during life. In addition to the provision for the execution of their wills by the plaintiff and his wife for the sole benefit of the defendant, the agreement provides that the real estate shall be conveyed to the defendant, the title to the steam lighter transferred to him, and the title to the life insurance policies assigned to him "so far as may be done." No mention is made, however, of the seat in the produce exchange, which, while of little financial value in itself, carried with it a right on the part of the plaintiff's wife, if she survived him, and on the part of his next of kin if she did not, to a fund by way of guaranty or indemnity amounting to the sum of nine or ten thousand dollars.

The provisions of the agreement appear to have been fairly carried out by the parties, the lawsuit relating only to the title to the certificate representing the seat in the produce exchange. In December, 1888,

After the execution of the agreement, the defendant gave the plaintiff a check with which to pay off the loan at the Corn Exchange Bank. The plaintiff paid the loan, receiving from the bank the certificate in question, bearing upon its back an assignment in blank, which had been signed by him at the time the loan was procured; and he immediately delivered the certificate to the defendant with the indorsement uncanceled. The plaintiff testified that he said nothing whatever at the time of such delivery, and he gave no statement or explanation of the reason for the delivery. The defendant testified that at the time the certificate was delivered to him the plaintiff said, "This belongs to you; this is yours." The defendant has retained possession of the certificate ever since its delivery, and has paid the dues and assessments as agreed, until the death of the plaintiff's wife, which occurred on December 20, 1902. The plaintiff has two sons, who will be entitled to the gratuity fund on his death, and the defendant shortly after the death of the plaintiff's wife notified the plaintiff that as that event terminated his (the defendant's) chance of ever receiving anything from that source, he desired to dispose of the certificate, and declined to pay any more assessments. The judgment determines that the title to the certificate is in the plaintiff, and requires the defendant to deliver possession of it to him, and to pay all the assessments, premiums, and dues upon it during the plaintiff's life.

I think the learned trial court erred in excluding evidence which was offered by the defendant for the purpose of showing a verbal understanding or agreement between the parties, entered into at or about the time of the making of the written agreement, providing expressly for the disposition to be made of the certificate in question. The general rule, of course, is well settled that no oral prior or contemporaneous agreement could be received in evidence to impeach, vary, or in any way affect the terms of a written contract; but this rule is subject to the qualification that "any independent fact or collateral parol agreement, whether contemporaneous with or preliminary to the main contract in writing, may be proved, provided it does not interfere with the terms of the written contract, although it may relate to the same subject-matter." 21 Am. & Eng. Enc. of Law (2d Ed.) p. 1095, and cases cited. Whether the excluded evidence would, if received, have disclosed the existence of such an independent and collateral oral contract, need not, perhaps, be considered on this appeal, inasmuch as the learned counsel for the respondent concedes in his brief that the excluded evidence would have been competent if the defendant had pleaded title to the certificate under a separate oral agreement. His contention is that in the answer the defendant claims title only under the written agreement, and he admits in the brief that, "had the defendant set up that such agreement did not contain all the agreements of the parties, and that there was another contemporaneous or prior agreement, and defendant claimed title to the certificate under and by virtue of such other agreement, then such testimony would have been admissible; but, as heretofore stated, the defendant relies upon the agreement set forth in the complaint, and claims title under it, whereas there is nothing contained in the agreement whereby defendant could claim title." Although the defendant, in his answer, does claim title to the

certificate under the written agreement, he also, in the tenth paragraph of the answer, asserts title generally by virtue of the transfer and delivery by the plaintiff to him of the certificate with the assignment indorsed and signed thereon; and, if an agreement to transfer such title was the proper subject of an oral understanding had contemporaneously with the execution of the written contract, I think the pleading is sufficient to justify the reception of the evidence.

I think, however, that the rule of law under consideration has no application to the present action, which is, not to enforce the oral agreement, but to recover back property which the defendant claims has been actually transferred and delivered for the purpose of conveying title in pursuance of its terms. Assuming that such an agreement, while executory, would be wholly invalid and unenforceable, yet the parties would be at liberty to carry it out if they saw fit voluntarily to do so; and if it be true that the plaintiff did deliver the certificate to the defendant for the purpose of transferring title to it in accordance with the terms of an agreement to that effect, the agreement would be completely executed by that act, and a good title would pass, notwithstanding the fact that such execution could not have been legally compelled. No question of public policy is involved, and there is no element of immorality or of illegality such as would exist in the case of a contract contravening the prohibition of positive law. The defendant has been in undisturbed and undisputed possession of the certificate for 14 years, with an apparent title, resulting from both the delivery and the blank assignment; and it would seem, in the absence of adverse authority, to be competent for him, under the general rules of evidence, to establish in defense of his right the motive or intent with which he has been so invested by the plaintiff with the apparent ownership by proof that the transfer of title was the voluntary consummation of even an invalid and unenforceable agreement.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur.